UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ X
                                           :
CRYSTAL BARKLEY,                           :
                                           :
                      Plaintiff,           :
                                           :        25cv205 (DLC)
              -v-                          :
                                           :        OPINION AND
AUDIENT CAPITAL GP LTD, et al.,            :            ORDER
                                           :
                      Defendants.          :
                                           :
------------------------------------------ X

APPEARANCES:

For plaintiff:

Robert Byrnes
Andrea Marie Moss
Moss & Byrnes PLLC
187 Hollow Rd
Staatsburg, NY 12580
213-587-2967

Defendant Richard Bucaria, appearing pro se

DENISE COTE, District Judge:

Plaintiff Crystal Barkley sued her former employer, Audient Capital GP LTD ("Audient"), and its managing general partner Richard Bucaria ("Bucaria"), for failing to pay her wages and for terminating her employment after she filed an arbitration action for that failure.  Audient is in default and Bucaria has filed a motion to dismiss the complaint.  For the following reasons, Bucaria's motion is granted in part.

## Background

The following facts are taken from the complaint.  This Opinion summarizes only those facts relevant to the instant motion.

Audient hired Barkley as its Director of Investor Relations.  Bucaria, the managing general partner of Audient, signed an Employment Agreement ("Agreement") with Barkley on behalf of Audient.  Bucaria signed the Agreement on October 1, 2023, for "Audient Capital GP Ltd" on a line designated for "Company Representative's Signature."  Immediately below, Bucaria's name is written in print over a line titled "Company Representative's Printed Name" and "Director."

The Agreement defines Barkley's three-year term of employment as lasting from October 1, 2023, to September 30, 2026.  The Agreement allows Audient to terminate Barkley's employment at its "discretion," but requires it to pay her "an amount equal to three (3) months base salary rate" unless her employment is terminated for cause.  Barkley's base salary for the first year of employment was set at $120,000 and increased thereafter.

Audient never paid Barkley any of the salary it owed her. At first, Bucaria attributed the failure to Audient's payroll company.  Next, Bucaria explained that the funding for the

payments would arrive the following day and that Bucaria would introduce Barkley to Audient's general counsel Randolph Mendelsohn and that Barkley would be paid when the funds cleared Mendelsohn's escrow account.  On February 20, 2024, Bucaria confirmed that the funds were in the escrow account.  Six days later, Bucaria reversed course and claimed that he was still waiting on funds from an investor.  Barkley was never introduced to Mendelsohn.

By May, after nine months of nonpayment, Barkley communicated to Bucaria that she was on the verge of eviction.  In response, on May 21, Bucaria wrote a letter to Barkley's landlord that she would be paid on May 28.  That did not happen.

The plaintiff filed an arbitration demand against Audient on July 10, 2024.  Audient ignored the arbitration demand, resulting in the AAA dismissing the demand on August 20.  On September 2, Barkley's employment was terminated in a letter signed by Bucaria and three other Audient general partners.  She was not terminated for cause; the letter stated that "Audient will of course comply with the employment contract with [Barkley]" and "will look to" remit any outstanding payments as well as three months of severance within 30 days of the letter, as outlined by the Agreement.  No such payment was made.

3

Barkley filed this action on January 9, 2025, asserting both diversity and federal question jurisdiction.  She alleged claims of racketeering ("RICO"), breach of contract, fraud, unpaid wages, and wrongful termination[1] against defendants, with an additional claim of intentional infliction of emotional distress ("IIED") against Bucaria.[2]  On June 18, a default was entered against Audient.  At a conference on September 25, Bucaria's motion to compel Barkley to arbitrate her claims against him was granted.  At that conference, Bucaria affirmed that he would "comply with all deadlines and the requirements of the arbitrators" and that he would not "delay the arbitration proceeding."

Bucaria did not submit the required deposit to pay for the arbitration and on February 27, 2026, the arbitration proceedings were terminated.  On March 12, Barkley moved to lift the arbitration stay.  At a conference on March 25, 2026,

---

[1] The fraud, unpaid wages, and wrongful terminational claims appear to be alternate theories of recovery for plaintiff's breach of contract claim.  The briefing treats the cluster of claims as synonymous with the breach of contract claim.  Under New York law, a fraud claim coupled with a contract claim is tenable only when the fraud alleged is "collateral or extraneous to the contract."  Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) (applying New York law) (citation omitted).

[2] The Agreement identifies New York law as governing the contract.

Barkley's motion was granted.[3]  A scheduling order of March 30 set a deadline of July 31 for the completion of fact discovery and October 23 for the filing of either the Joint Pretrial Order or a summary judgment motion.  On April 8, Bucaria filed a motion to dismiss the complaint.  The motion became fully submitted on May 15.  A mediation between the parties is scheduled to occur in July.

## Discussion

Bucaria's arguments in his motion to dismiss are construed as follows: he is moving to dismiss the RICO claim for failure to state a claim and the breach of contract claim on the grounds that the plaintiff cannot pierce the corporate veil to bring a claim against him personally and that there is no contractual privity between Bucaria and the plaintiff.[4]  These arguments are addressed in turn below.

To defeat a motion to dismiss brought under Rule 12(b)(6),[5] "a complaint must contain sufficient factual matter, accepted as

---

[3] Bucaria was given an opportunity to respond to the motion at the conference.

[4] Bucaria, who is appearing pro se, has not moved to dismiss the IIED claim.  See Chanko v. Am. Broad. Companies Inc., 27 N.Y.3d 46, 56 (2016) (describing elements of an IIED claim).

[5] Bucaria cites N.Y.C.P.L.R. § 3211, the state rule for motions to dismiss, in his opening brief.  He appears to recognize in his reply, however, that his motion must be reviewed in federal court under Rule 12(b)(6), Fed. R. Civ. P.

true, to state a claim to relief that is plausible on its face." Doe v. Franklin Square Union Free School Dist., 100 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Iqbal, 556 U.S. at 678).  In determining if a claim is sufficiently plausible to withstand dismissal, a court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."  Doe, 100 F.4th at 94 (citation omitted).

I.   RICO

Bucaria contends that the complaint fails to plead a RICO claim.  The complaint defines the RICO enterprise as Audient and two of its general partners, Bucaria and Mark Spillane.  Because a RICO enterprise cannot consist of a corporate defendant and its own employees and agents, the motion is granted.

The Racketeer Influenced and Corrupt Organizations ("RICO") Act makes it

> unlawful for any person employed by or associated with
> any enterprise engaged in, or the activities of which
> affect, interstate or foreign commerce, to conduct or
> participate, directly or indirectly, in the conduct of
> such enterprise's affairs through a pattern of
> racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  To establish a violation of § 1962(c), i.e., a substantive violation of the RICO statute, a civil plaintiff must show that she was injured by defendants' "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Kim v. Kimm, 884 F.3d 98, 103 (2d Cir. 2018) (citation omitted).

Barkley alleges an "association-in-fact" as the RICO enterprise at issue, which the Supreme Court defines as "a group of persons associated together for the common purpose of engaging in a course of conduct."  Boyle v. United States, 556 U.S. 938, 946 (2009) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).  To prove an "association-in-fact," she must establish "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  Boyle, 556 U.S. at 946.

> Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself.  Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.

7

DeFalco v. Bernas, 244 F.3d 286, 307 (2d Cir. 2001) (citation omitted).

The complaint does not plausibly plead an association-in-fact enterprise.  Bucaria and Spillane are agents and employees of Audient and do not form an enterprise distinct from Audient itself.  The RICO claim is dismissed.

  II.  Breach of Contract

Bucaria argues that Barkley entered into an employment agreement with Audient and that she has not shown that she can pierce Audient's corporate veil to recover damages from him personal.  He contends as well that there is no privity of contract between him and Barkley.   These arguments are addressed below.

    A. Piercing the Veil

Bucaria argues that the Agreement was between Barkley and Audient and that the breach of contract claim brought against him must be dismissed since the complaint does not plead sufficient facts to pierce Audient's corporate veil.  In particular, he contends that the complaint fails to plead that he owns or controls Audient.

In evaluating whether it is appropriate to pierce the corporate veil, New York law considers whether 1) "the owner [of a company] exercised complete domination over the corporation

8

with respect to the transaction at issue," and 2) "such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."  MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 63 (2d Cir. 2001) (citation omitted).  Whether veil-piercing is appropriate is a "fact specific" inquiry, and courts may consider many factors, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

Id. (citation omitted).

The complaint has pleaded sufficient facts to allow its breach of contract claim to proceed against Beccaria through the discovery period.  This motion is denied without prejudice to its renewal following the completion of discovery.

B. Privity of Contract

Bucaria next argues that he is not a party to the Agreement merely because he signed the Agreement.  He asserts that he signed the Agreement as an employee or agent of Audient.

9

Under New York law, it is a general principle that "only parties in privity of contract may enforce terms of the contract."  Freeford Ltd. v. Pendleton, 857 N.Y.S.2d 62, 67 (N.Y. App. Div. 1st Dept. 2008).  In other words, one who is not a party to a contract cannot be held liable for breach of that contract.  Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc., 813 N.Y.S.2d 751, 752 (App. Div. 2d Dep't 2006); Smith v. Fitzsimmons, 584 N.Y.S.2d 692, 695 (App. Div. 4th Dep't 1992) ("As a general rule, privity or its equivalent remains the predicate for imposing liability for nonperformance of contractual obligations.").  It is another longstanding principle that "[a]n agent dealing on behalf of a disclosed principal is not liable for his or her principal's breach of contract absent evidence that the agent intended to be bound personally on the contract."  Broadway Warehouse Co. v. Buffalo Barn Bd., LLC, 39 N.Y.S.3d 555, 559 (N.Y. App. Div. 4th Dept. 2016) (citation omitted).

Bucaria is correct.  The complaint fails to plead that Bucaria's signature on the Agreement renders him a party to the Agreement.  Bucaria signed the Agreement on behalf of Audient as a "director" and "company representative," or, in other words, as an employee and agent of Audient.  Accordingly, Barkley may not pursue the breach of contract claim against Bucaria unless

she is able to pierce Audient's corporate veil to hold Bucaria

personally liable for Audient's breach of the Agreement.

Barkley contends that Bucaria is judicially estopped from

denying liability under the Agreement because Bucaria moved to

compel arbitration pursuant to the Agreement's arbitration

clause.  Barkley's argument fails.

The doctrine of judicial estoppel is well established.

> Where a party assumes a certain position in a legal
> proceeding, and succeeds in maintaining that position,
> he may not thereafter, simply because his interests
> have changed, assume a contrary position, especially
> if it be to the prejudice of the party who has
> acquiesced in the position formerly taken by him.
> This rule, known as judicial estoppel, generally
> prevents a party from prevailing in one phase of a
> case on an argument and then relying on a
> contradictory argument to prevail in another phase.

New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (citation

omitted).

> Generally, judicial estoppel will apply if: [A] a
> party's later position is clearly inconsistent with
> its earlier position; [B] the party's former position
> has been adopted in some way by the court in the
> earlier proceeding; and [C] the party asserting the
> two positions would derive an unfair advantage against
> the party seeing estoppel.

BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC, 859 F.3d

188, 192 (2d Cir. 2017) (citation omitted).

"[T]he exact criteria for invoking judicial estoppel will

vary based on specific factual contexts."  Adelphia Recovery

Trust v. Goldman, Sachs & Co., 748 F.3d 110, 116 (2d Cir. 2014)

(citation omitted).  The purpose of the doctrine "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  Id. (citation omitted).  "Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion."  Maine, 532 U.S. at 750 (citation omitted).

In support of his motion to compel arbitration, Bucaria argued that the claims against him were covered by the arbitration clause in the Agreement.  That clause, by its terms, covers all "disputes" and "claims" arising out of the Agreement.  There is no dispute that Barkley's claims against Bucaria arose out of the Agreement and that the Agreement's arbitration clause compelled Barkley to arbitrate those claims.  It is not inconsistent of Bucaria to argue, however, that he is not liable for breach of the Agreement.  Therefore, Bucaria is not judicially estopped from contesting his liability in this lawsuit.  Indeed, he would have been able to contest his liability during the arbitration had he participated in the arbitration.[6]

---

[6] Bucaria also moves to dismiss the complaint for failure to join Audient as an indispensable party.  Audient, however, is a named defendant in this lawsuit and is in default.  The determination of damages against Audient has been deferred until Bucaria's liability is adjudicated.

12

## Conclusion

Bucaria's April 8, 2026 motion to dismiss is granted in part.  The RICO claim is dismissed.

Dated:    New York, New York
          June 8, 2026

                                    _____
                                         DENISE COTE
                              United States District Judge